******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE RICARI B.[*]
# (AC 49119)

Cradle, C. J., and Alvord and Seeley, Js.

*Syllabus*

The respondent father appealed from the trial court's judgment terminating his parental rights with respect to his minor child. The father claimed that the court improperly determined that he was unable or unwilling to benefit from the reunification efforts of the Department of Children and Families. *Held*:

The respondent father's appeal was not moot, despite the claim of the petitioner, the Commissioner of Children and Families, that the father had challenged only one of the two bases for the trial court's determination that the statutory (§ 17a-112 (j) (1)) requirements for the termination of parental rights had been satisfied, as the court did not make a finding by clear and convincing evidence that the department had made reasonable efforts to reunify the respondent with the child.

This court concluded that the trial court's determination that the respondent father was unable or unwilling to benefit from the department's reunification efforts was supported by sufficient evidence, including evidence that the father had refused to communicate with the department for a five month period, that he had failed to benefit from counseling and substance abuse services, that he had tested positive for substances on numerous occasions, that he was inconsistent in complying with substance use tests, and that he had acted aggressively with probation staff, treatment providers, and department staff.

Argued April 29—officially released May 20, 2026[**]

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior

---

[*]In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2024); we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[**]May 20, 2026, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Court in the judicial district of Bridgeport, Juvenile Matters, where the case was tried to the court, *Skyers, J.*; judgment terminating the respondents' parental rights, from which the respondent father appealed to this court. *Affirmed*.

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent father).

*Stephen G. Vitelli*, deputy associate attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Nisa Khan*, former assistant attorney general, for the appellee (petitioner).

*Rebecca A. Rebollo*, for the minor child.

*Opinion*

ALVORD, J. The respondent father, Ricardo B., appeals from the judgment of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating his parental rights with respect to his minor child, Ricari B.[1] On appeal, the respondent claims that the court improperly determined that he was unable or unwilling to benefit from the reunification efforts of the Department of Children and Families (department).[2] We affirm the judgment of the court.

The following facts, which were found by the trial court, and procedural history are relevant to our review. The department became involved with the child at birth upon receiving a referral after Dakota A. (Dakota), the child's mother, tested positive for marijuana and benzodiazepines. "From birth [at twenty-three weeks, the child] was a medically complex child and was considered a micropremie. He stayed in the [neonatal intensive care

---

[1] The court also terminated the parental rights of Dakota A., the respondent mother of the child. She has not appealed from the termination of her parental rights. All references in this opinion to the respondent are to Ricardo B. only.

[2] The attorney for the minor child filed a statement adopting the brief of the petitioner in this appeal pursuant to Practice Book §§ 67-13 and 79a-6 (c).

unit] at Yale New Haven Hospital for over eight months: from birth until April 12, 2021. . . .

"On January 22, 2021, the department received [another] referral . . . due to a domestic dispute between Dakota and [the respondent]. Dakota reported to [the department] that [the respondent] punched, kicked and strangled her and indicated that he was going to kill her if he found her. The department offered her emergency shelter services but she declined. [The respondent] was subsequently arrested. A full no contact protective order was issued where Dakota was the protected party."

"On February 22, 2021, hospital staff had a medical meeting regarding [the child's] needs and reported that the parents were inconsistent and sporadic with their visits to [the child]. The hospital further reported that the hospital visits were times when the parents could receive education and child-specific training on [the child's] care. Because of the inconsistent visits, neither parent had received the education and training required to provide [the child] with the specialized medical care that the child would need when discharged from the hospital."

On February 26, 2021, the petitioner filed a motion for an ex parte order of temporary custody and a neglect petition on the child's behalf. The court, *Maronich, J.*, granted the order of temporary custody. On March 5, 2021, the court sustained the order of temporary custody. On July 8, 2021, the court adjudicated the child neglected and committed him to the custody of the petitioner. The court ordered specific steps for the respondent to take. On July 30, 2024, the petitioner filed a petition to terminate the respondent's parental rights.

On July 11, 2025, following a trial, the court, *Skyers, J.*, issued a memorandum of decision terminating the respondent's rights as to the child. The court made the following findings with respect to the child, who is certified as medically complex, level two. "At birth, [the child] had chronic lung disease of prematurity, persistent

pulmonary hypertension, and required oxygen. He is presently diagnosed with cerebral palsy, bronchopulmonary dysplasia, asthma and global developmental delays. He was described as 'medically fragile.'

"On June 1, 2022, [the child] had a number of procedures performed at Yale surgical center including but not limited to tonsillectomy, adenoidectomy, bilateral ear tube placement, laryngoscopy, bronchoscopy, bronchoalveolar lavage, and upper GI endoscopy with biopsies. [The child] has made significant medical progress over the years with physical and occupational therapy to strengthen his core muscles and feeding. He received Birth to Three services until preschool.

"He continues to have several medical appointments including respiratory medicine, otolaryngology, allergy and immunology, neurology and orthopedics. [The child] has improved verbally by saying more words, walking, and being more independent. He has been attending the Early Childhood Center. Although he has made improvement, he still needs assistance in feeding, dressing, and language. Pranvera Dauti, [a] teacher at [the child's] school, testified that [the child] has 'come a long way.' At age three, [the child] moved to the preschool program and is working with the Early Childhood Center. He does well when he has a consistent schedule and struggles if there is a change in his schedule. There were reports that after returning from some visits with his parents, he became dysregulated. [The child] attends play therapy through CT Kids Matter to help him to display a full range of emotions without experiencing a loss of control.

"[The child] has been in only one foster home since entering the [petitioner's] care in 2021. [He] looks to the foster parents for love and support. The foster parents meet all of [his] many medical, emotional and physical needs."

The court made the following findings regarding the respondent. "From January through May 2023, [the respondent] ceased all interaction and communication

with the department, including attending visits with [the child]. [The respondent] never engaged in any Birth to Three services with [the child]. He did not attend any of [the child's] appointments. He resumed visits with [the child] in May 2023 and received weekly visits at the [department's] office. [The respondent] was also engaged in [therapeutic family time] services from September through December 2023. [The respondent] had positive interactions with [the child].

"In February 2023, [the respondent] was referred to Recovery Network for an anger management group. He participated in the program consistently until June 2023. However, he abruptly disengaged with the program and was unsuccessfully discharged from the program. In May 2023, [the respondent] violated his probation and had pending charges, including reckless endangerment, risk of injury to a child,[3] assault [in the third degree], and [criminal] violation of a protective order.

"He was referred by probation to an intensive outpatient program at Southwest Community Health Center in September 2023 for mental health and substance abuse. He initially had favorable reports, which resulted in him being 'stepped down' to relapse prevention. However, on December 11, 2023, he relapsed, testing positive for fentanyl, and, on January 3, 2024, he tested positive for both fentanyl and cocaine. In January 2024, he was discharged from the program due to a violation of the program rules pursuant to the code of conduct.

"In January 2024, the department implemented an emergency suspension of visits due to safety concerns due to an incident with [the respondent] at the [department's] office. [The respondent] was verbally aggressive and combative toward the [department's] staff and service providers. [The respondent] became upset and was cursing at the social worker at the [department's] office. The department recommended that the respondent . . .

---

[3] The identity of the child in relation to the charge of risk of injury to a child is not clear from the record, but there is no indication that it was the child involved in this appeal.

engage in mental health treatment to address his trauma, anger, and history of [intimate partner violence] before visits could resume. As a result of this incident, the department moved the [visitation] service office from Bridgeport to Norwalk after completing a threat assessment. On February 29, 2024, the court suspended [the respondent's] visits with [the child]. In February 2024, [the respondent] was referred again to Recovery Network of Programs for anger management and psychiatric evaluation. On April 19, 2024, he completed the anger management program." (Footnote added.)

In light of the foregoing findings, the court concluded that the petitioner had demonstrated by clear and convincing evidence that the respondent was unable or unwilling to benefit from the reunification efforts of the department. Specifically, the court stated: "The respondent . . . refused to communicate with the department for five months from January through May 2023. He was referred to anger management at Recovery Network of Programs, Southwest Community Center for substance abuse services, individual counseling and supervised visitation. Both parents have failed to benefit from counseling and services and failed to maintain sufficient consistency and stability that would enable them to reunify them with their children."

The court further found that the respondent had failed to achieve a sufficient degree of personal rehabilitation that would encourage the belief that, within a reasonable time, considering the age and needs of the child, he could assume a responsible position in his life. In the dispositional phase of the proceedings, the court made findings as to each of the criteria set forth in General Statutes § 17a-112 (k),[4] and determined that terminating

[4] General Statutes § 17a-112 (k) provides: "Except in the case where termination of parental rights is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and

the respondent's parental rights was in the child's best interest. Accordingly, the court rendered judgment terminating the respondent's parental rights and appointing the petitioner as the child's statutory parent.[5] This appeal followed.

## I

As a threshold matter, we address the petitioner's contention that this appeal is moot. The petitioner argues that the respondent's appeal should be dismissed as moot because the respondent challenges only one of the two bases for the court's determination that the requirements of §17a-112 (j) (1) had been satisfied. We disagree with the petitioner that the court made a finding by clear and convincing evidence that the department made reasonable efforts to reunify the respondent with the minor child, and, accordingly, we conclude that the respondent's appeal challenging the court's finding that the respondent was unable or unwilling to benefit from such efforts is not moot.

Families has made reasonable efforts to reunite the family pursuant to the federal Adoption and Safe Families Act of 1997, as amended from time to time; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[5]The court also denied the respondent's motion for posttermination visitation.

"Mootness raises the issue of a court's subject matter jurisdiction . . . . Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . We begin with the four part test for justiciability . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires **(1)** that there be an actual controversy between or among the parties to the dispute . . . **(2)** that the interests of the parties be adverse . . . **(3)** that the matter in controversy be capable of being adjudicated by judicial power . . . and **(4)** that the determination of the controversy will result in practical relief to the complainant. . . . **[I]**t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." **(**Emphasis omitted; internal quotation marks omitted.**)** *In re Natalia M.*, 190 Conn. App. 583, 587–88, 210 A.3d 682, cert. denied, 332 Conn. 912, 211 A.3d 71 (2019).

As part of a termination of parental rights proceeding, § 17a-112 (j) (1) requires the petitioner to prove by clear and convincing evidence that the department "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification efforts . . . .

"Because the two clauses are separated by the word unless, **[**§ 17a-112 (j) (1)**]** plainly is written in the conjunctive. Accordingly, the **[**petitioner**]** must prove either that **[**the department**]** has made reasonable efforts to reunify or, alternatively, that the parent is unwilling or unable to benefit from reunification efforts. Section 17a-112 (j) clearly provides that the **[**petitioner**]** is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." **(**Internal

quotation marks omitted.) *In re Elijah C.*, 326 Conn. 480, 493, 165 A.3d 1149 (2017). Thus, when a trial court finds that the petitioner has proven both statutory elements, a "respondent's failure to challenge both findings on appeal renders the appeal moot because either one constitutes an independent, alternative basis for affirming the trial court's judgment." Id., 494.

In the present case, the petitioner contends that the trial court made findings that the petitioner had proven both statutory elements. With respect to whether the department made reasonable efforts toward reunification, the petitioner contends that such finding was made (1) expressly in the court's "official termination of parental rights order," and (2) "impliedly" within the court's memorandum of decision. The petitioner contends that "a fair reading of the trial court's written memorandum of decision shows that it not only made the subordinate factual findings to support its express finding in the termination order, but it impliedly made the finding within the decision itself." The petitioner notes that some of the findings on which she relies are located outside of the reasonable efforts section of the court's memorandum of decision but argues that the opinion must be read as a whole. The respondent emphasizes that "nowhere in the adjudicatory phase of the decision does the trial court state that the department made reasonable efforts to reunify."

Having reviewed the decision as a whole, we conclude that the court did not make a finding by clear and convincing evidence that the department made reasonable efforts to reunify the respondent with the child. First, the section of the court's memorandum of decision captioned "Reasonable Efforts" did not contain a finding that the petitioner proved by clear and convincing evidence that the department made reasonable efforts at reunification. In that section, the court set forth the legal principles governing such a determination, made findings regarding referrals involving the respondent, and then concluded with an express finding that the petitioner proved by clear

and convincing evidence that the respondent is unable or unwilling to benefit from reunification efforts. The court then turned to the statutory ground for termination of the respondent's parental rights and concluded that the petitioner proved by clear and convincing evidence that the respondent failed to achieve a sufficient degree of personal rehabilitation that would encourage the belief that, within a reasonable time, considering the age and needs of the child, he could assume a responsible position in the child's life. Finally, in the section of the court's memorandum of decision captioned "Disposition," the court made findings as to each of the criteria set forth in §17a-112 (k). See footnote 4 of this opinion. Specifically, as to the statutory factor of whether the department had made reasonable efforts to reunite the family, the court determined that the department "has made reasonable efforts to reunite the family by offering case management, supervised visitation and referrals for services. The department provided substance abuse referrals, referrals for counseling and court-ordered evaluations." The court, however, did not state that it made this finding by clear and convincing evidence.[6] See *In re Ryder M.*, 211 Conn. App. 793, 818, 274 A.3d 218 (no requirement that each §17a-112 (k) factor be proven by clear and convincing evidence), cert. denied, 343 Conn. 931, 276 A.3d 433 (2022). Instead, the court expressly noted at the outset of its written findings as to the §17a-112 (k) factors that " '[t]here is no requirement that each factor be proven by clear and convincing evidence.' " Thus, there is no finding within the court's

---

[6] The absence of language stating that the court made this finding by clear and convincing evidence is significant given that the court, throughout its memorandum of decision, specifically stated that it was making certain findings by clear and convincing evidence. For example, the court expressly stated: "[T]he department has proven by clear and convincing evidence that . . . [the respondent is] unable or unwilling to benefit from reunification efforts." The court also stated: "The clear and convincing evidence further shows that [the respondent] was unable to appropriately address the issues that led to [the child's] removal by the time of the filing of the petition for the termination of parental rights or by the time of the trial. The clear and convincing evidence shows that [the respondent] failed to achieve [sufficient] personal rehabilitation . . . ."

memorandum of decision that the petitioner had proven by clear and convincing evidence that the department had made reasonable efforts to reunify the respondent with the child.

With respect to the petitioner's contention that the court made subordinate factual findings and "impliedly" made the finding that reasonable efforts had been made, we decline to speculate as to what ultimate finding the court might have reached on the basis of these findings, additionally keeping in mind that any subordinate findings contained within the best interest determination were not required to be proven by clear and convincing evidence. See *In re Christina C.*, 221 Conn. App. 185, 220, 300 A.3d 1188 ("Although the court made several findings concerning the respondent pursuant to § 17a-112 (k), which are strongly suggestive that termination of the respondent's parental rights would be in [the child's] best interests, it did not state an ultimate finding with respect to what was in [the child's] best interests as far as the respondent's parental rights are concerned. Similarly, although the court's factual findings are strongly suggestive of termination, we cannot speculate as to what ultimate finding the court might have reached on the basis of these findings."), cert. denied, 348 Conn. 907, 301 A.3d 1056 (2023).

Finally, we are not persuaded by the petitioner's reliance on form JD-JM-31, titled "Order, Termination of Parental Rights and Appointment of Statutory Parent/ Guardian." The fact that the form contains a box checked for the statement, "the court finds clear and convincing evidence that . . . [the department] has made reasonable efforts to reunify the child with the . . . parent," does not overcome the absence of an express factual finding contained within the court's memorandum of decision. To the extent that the court had intended to make such a finding in its memorandum of decision, and neglected to do so, we take this opportunity to reiterate the importance of express factual findings in juvenile proceedings, "where the stakes are significant and appellate review

must be tethered to discernible, reviewable findings."[7]

[7]We also take this opportunity to remind trial courts that there is a statutory scheme governing termination of parental rights proceedings, which sets forth the specific findings that the court must make in support of a decision terminating a respondent's parental rights. "[P]roceedings to terminate parental rights are governed by . . . § 17a-112 . . . . Because a respondent's fundamental right to parent his or her child is at stake, [t]he statutory criteria must be strictly complied with before termination can be accomplished and adoption proceedings begun. . . . Under § 17a-112, a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase." (Citation omitted; internal quotation marks omitted.) *In re J. D.*, 232 Conn. App. 714, 723–24 n.12, 337 A.3d 786, cert. denied, 352 Conn. 959, 336 A.3d 1250 (2025).

Under § 17a-112 (j), a trial court, in granting a petition to terminate parental rights, first must find "by clear and convincing evidence that (1) the [department] has made reasonable efforts . . . to reunify the child with the parent . . . unless the court finds . . . that the parent is unable or unwilling to benefit from reunification efforts . . . ." See *In re Niya B.*, 223 Conn. App. 471, 476 and n.5, 308 A.3d 604, cert. denied, 348 Conn. 958, 310 A.3d 960 (2024). "In construing that statutory language, our Supreme Court has explained that, [b]ecause the two clauses are separated by the word unless, this statute plainly is written in the conjunctive. Accordingly, the [petitioner] must prove either that [the department] has made reasonable efforts to reunify or, alternatively, that the parent is unwilling or unable to benefit from reunification efforts. . . . [E]ither showing is sufficient to satisfy this statutory element. . . . [I]n cases in which the trial court concludes that *both* findings have been proven, a respondent on appeal must demonstrate that both determinations are improper." (Emphasis in original; internal quotation marks omitted.) *In re Ariella M.*, 234 Conn. App. 502, 512, 343 A.3d 876 (2025).

Thereafter, "the . . . court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence. . . . If the trial court determines that a statutory ground for termination exists, *then* it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child." (Emphasis added; internal quotation marks omitted.) *In re J. D.*, supra, 232 Conn. App. 724 n.12.

In the present case, therefore, to the extent that the court intended to make a finding by clear and convincing evidence that the department had made reasonable efforts to reunify the child with the respondent, best practices would dictate that the court make that finding explicitly and under the section captioned "Reasonable Efforts" within the "Adjudication" portion of its memorandum of decision. "We emphasize that a court should set forth its reasoning and make express findings as to the specific facts on which it relies in reaching its ultimate determination.

*In re Janeleah I.*, 233 Conn. App. 633, 654 n.14, 341 A.3d 390 (2025).

Accordingly, we conclude that the respondent's appeal is not moot.

II

We turn, therefore, to the respondent's sole claim on appeal. The respondent claims that the court improperly determined that he was unable or unwilling to benefit from the department's reunification efforts. We disagree.

"[I]n evaluating a trial court's ultimate finding that the respondent was unable or unwilling to benefit from rehabilitation efforts for evidentiary sufficiency, we ask whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in the light most favorable to sustaining the judgment of the trial court. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Jadiel B.*, 228 Conn. App. 290, 297, 324 A.3d 211, cert. denied, 350 Conn. 921, 325 A.3d 217 (2024). "The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous . . . . [W]e review the trial court's subordinate factual findings for clear error. . . . We review the trial court's

Indeed, a complete and thorough statement of the court's factual findings in child protection cases provides the best illustration that the trial court properly considered all of the elements of § 17a-112 (j) in arriving at its ultimate conclusion that the respondent's parental rights should be terminated. . . . Issuing a comprehensive decision also facilitates appellate review of the judgments rendered in these significant cases." (Citation omitted; internal quotation marks omitted.) *In re Matthew W.*, 231 Conn. App. 21, 31 n.6, 331 A.3d 1239 (2025).

ultimate determination . . . [that a parent is unable or unwilling to benefit from reunification services] for evidentiary sufficiency . . . ." (Internal quotation marks omitted.) *In re Maci S.*, 229 Conn. App. 734, 742, 328 A.3d 269 (2024).

In the present case, the court found that the respondent refused to communicate with the department for five months, from January through May 2023, and that he was referred to anger management, substance abuse services, individual counseling, and supervised visitation. The court found that the respondent had "failed to benefit from counseling and services and failed to maintain sufficient consistency and stability . . . . Therefore, the [petitioner] has proven by clear and convincing evidence that . . . [the respondent is] unable or unwilling to benefit from reunification efforts."

A careful review of the record reveals that there was clear and convincing evidence to support the court's finding that the respondent was unable or unwilling to benefit from the department's reunification efforts.[8] First, there was evidence that the respondent stopped all interaction with the department, including visits with the child, for a period of five months, from January through May 2023. Second, there was evidence that the respondent tested positive for substances on numerous occasions, including amphetamines in May 2023, and cocaine, fentanyl, and marijuana in January 2024. There also was evidence that he was inconsistent in complying with substance use tests, at times refusing to provide a sample.

[8]The respondent also challenges the constitutionality of General Statutes §§ 17a-111b and 17a-112 (j). Specifically, he contends that the "statutory interplay between [these statutes] allows for an impermissible end run around the clear and convincing evidentiary standard required, as a matter of due process, in all termination hearings." In the present case, the court expressly found, on the basis of clear and convincing evidence, that the respondent was unable or unwilling to benefit from reunification efforts, and, thus, we need not address the respondent's constitutional claim. See *In re Jadiel B.*, supra, 228 Conn. App. 296 n.6.

The court also had before it ample evidence of the respondent acting aggressively with probation staff, treatment providers, and department staff. The respondent's probation officer testified that, in April 2023, the respondent yelled "derogatory terms at the staff member" supervising the rendering of his urine sample. The department's social worker testified that phone calls "usually resulted in [the respondent] yelling and cursing at me if things didn't go [his] way." In October 2023, the respondent became loud and began cursing in the waiting room of the child's medical appointment. When a positive urine test reported by probation caused the respondent's visits to be changed from community visits to office visits in June 2023, the respondent again yelled and cursed at the social worker. In January 2024, the respondent's visits with the child were suspended for a period of time after he engaged in an altercation at the department's office. Also, in January 2024, the respondent was discharged from Southwest Community Health Center after making aggressive comments toward a staff member attempting to facilitate a Breathalyzer test.

The respondent argues that the trial court improperly relied on the January 2024 incident at the department's office, given that he subsequently completed an anger management program in April 2024.[9] We are not persuaded that the court could not reasonably conclude that the respondent had been unable or unwilling to benefit

[9]The respondent also argues that the court improperly considered an incident in November 2024 when his employment was terminated following an incident in which he had yelled at a manager after he was reprimanded for breaking a piece of equipment. As the petitioner emphasizes, the respondent's termination of employment occurred following the adjudicatory date; see *In re Cameron W.*, 194 Conn. App. 633, 660, 221 A.3d 885 (2019) (in determining "whether there is sufficient evidence that a parent is unable or unwilling to benefit from reunification efforts, the court is required in the adjudicatory phase to make its assessment *on the basis of events preceding the date on which the termination petition was filed*" (emphasis in original; internal quotation marks omitted)), cert. denied, 334 Conn. 918, 222 A.3d 103 (2020); and there is no indication that the court considered that incident in determining that the respondent was unable or unwilling to benefit from reunification efforts.

from reunification efforts despite his recent completion of an anger management program. We are reminded that "we do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . Rather, we ask whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its ultimate conclusion . . . ." (Citation omitted; internal quotation marks omitted.) *In re Ava M.*, 223 Conn. App. 590, 600, 309 A.3d 383, cert. denied, 348 Conn. 962, 312 A.3d 38 (2024).

Construing the evidence in the light most favorable to sustaining the judgment of the trial court, we conclude that the court's determination that the respondent was unable or unwilling to benefit from the department's reunification efforts is supported by sufficient evidence.

The judgment is affirmed.

In this opinion the other judges concurred.